**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

June 30, 2026

# In the Court of Appeals of Georgia

A26A0330. THE RIVER FARM, LLC et al. v. HALL COUNTY BOARD OF TAX ASSESSORS.

DAVIS, Judge.

The River Farm, LLC and The River Farm Two, LLC ("River Farm") appeal the superior court's order granting summary judgment to the Hall County Board of Tax Assessors ("Board"), which determined that River Farm breached a conservation use covenant that allowed River Farm to claim an agricultural property tax exemption. River Farm argues that (1) a genuine issue of material fact exists as to whether the Board complied with the statutory requirement to notify River Farm of the breach; and (2) the superior court erroneously shifted the burden to River Farm to prove their application was submitted, when the Board had exclusive control over the ability to prove this fact. For the reasons that follow, we affirm.

> To succeed on a motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. OCGA § 9-11-56(c). In reviewing the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and the evidence, and we view the evidence in the light most favorable to the nonmovant.

*Morgan County Bd. of Tax Assessors v. Ward*, 318 Ga. App. 186, 186 (733 SE2d 470) (2012).

So viewed, the record shows the following. On March 6, 2021, River Farm purchased the property at issue which is located at 9412 Skitts Mountain Drive in Hall County, Georgia. The prior owners of the property had entered into a conservation use covenant for ten years, and when River Farm purchased the property in 2021, it was in its last year of the ten year permit. River Farm had until April 1, 2022, to file the application to continue the conservation use covenant. On March 23, 2022, River Farm owner Zac Hill[1] went to the Hall County Tax Assessor's Office to verify the conservation status on the River Farm property and two other properties he owned that were in conservation status. Duckworth, the co-owner of the Skitts Mountain property, did not accompany Hill to the tax office, and Duckworth stated that he

---

[1] Zac Hill is the sole owner of The River Farm, LLC and Nathan Duckworth is the sole owner of The River Farm Two, LLC. Each entity owns 50% of the property located at 9412 Skitts Mountain Drive.

relied upon Hill's assurances that the application was completed. Ultimately, although Hill believed he had applied for the continuing conservation use permit on the Skitts Mountain property, he did not complete that application. On April 8, 2022, the Board sent a letter via certified mail to River Farm to explain that the April 1, 2022 deadline had not been met and that River Farm had until May 10, 2022 to cure the breach by filing an application to continue the conservation use permit. The Board also contends it mailed the same letter via regular mail.[2] River Farm did not receive the April 8, 2022 certified mail letter giving notice of the breach as it was returned to the Board as "unclaimed." On June 1, 2022, at the Hall County Board of Tax Assessors meeting, the Board officially declared that the owners of the Skitts Mountain property had breached the conservation use covenant. Around June 9, 2022, River Farm received the penalty bill for the breach. River Farm appealed the Board's decision that it had breached the conservation use covenant to Hall County Superior Court. The Board filed a motion for summary judgment which the superior court granted. It is from the

---

[2] Steve Watson, the Board's Chief Appraiser, testified to the Board's procedure for preparing and mailing notices by both regular and certified mail using the owners' address disclosed in the Real Estate Transfer Tax Declaration.

superior court's grant of the Board's motion for summary judgment that River Farm appeals.

1. River Farm first argues the superior court erred in granting the Board's motion for summary judgment because a genuine issue of material fact exists as to whether the Board complied with the requirement to provide written notice of the breach because River Farm did not receive notice of the breach.[3] We disagree.

In regard to the issue of notice, we have noted that "[i]n some instances, particular statutes ... mandating notice are not complied with unless or until the notice is actually received. In various other contexts, however, it is unnecessary to show receipt[.]" *Five Star Steel Contractors, Inc. v. Colonial Credit Union*, 208 Ga. App. 694, 695 (431 SE2d 712) (1993) (quotation marks omitted). Thus, "[i]n determining whether notice required under a specific statute must be received, the language of the

---

[3] The Board contends River Farm has failed to preserve this argument for appellate review because it raised the notice issue for the first time in its motion for reconsideration, after the superior court had granted summary judgment to the Board. But River Farm asserted in its opposition to the Board's motion for summary judgment that it did not receive written notice of the breach of the covenant. The superior court interpreted River Farm's argument to include a challenge to their receipt of notice, and it ruled on that issue in its initial October 24, 2024 order granting summary judgment for the Board. Therefore, because River Farm raised this claim below in opposition to the Board's motion for summary judgment and the trial court ruled upon it, River Farm's claim was preserved for appellate review.

particular statute in issue must be interpreted in accordance with recognized principles of construction, in each case keeping in mind that the cardinal rule is to seek diligently the intention of the legislature and effectuate the statute's purpose." Id. at 696. Some of the familiar principles applicable to statutory construction include the following:

> In considering the meaning of a statute, our charge as an appellate court is to presume that the legislative body meant what it said and said what it meant. And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. In sum, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.

*Swarn v. Thompson*, 369 Ga. App. 321, 324 (893 SE2d 474) (2023) (citation modified). Moreover, we have been clear that "the doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced, as a result of which appellate courts can not add a line to the law." *Morse v. SunTrust Bank, N.A.*, 364 Ga. App. 571, 580(3) (873 SE2d 238) (2022) (quotation marks omitted).

Pertinently, OCGA § 48-5-7.4(k.1) (2022) provides in part that "[i]n the case of an alleged breach of the covenant, the owner shall be notified in writing by the board

5

of tax assessors. The owner shall have a period of 30 days from the date of such notice to [cure the breach.]" In examining this language, it is apparent that although the Board is required to provide written notice of a breach of a covenant, there is nothing in the plain language of the statute that requires that the owner actually receive the notice. See *McCollum v. Pope*, 261 Ga. 835 (411 SE2d 874) (1992) (actual receipt of OCGA § 44–14–162.2 notice of initiation of proceedings to exercise the power of sale in a mortgage, security deed, or other lien contract is immaterial); *Williams v. Runion*, 173 Ga. App. 54, 59–60(5) (325 SE2d 441) (1984) (OCGA § 51–12–14, which directs a claimant to "give[] written notice by registered or certified mail or statutory overnight delivery" of a notice of claim for interest on unliquidated damages, only requires proper mailing, and receipt of the notice is not required). The statute only requires that written notice be sent to the owner, and to construe this provision as requiring that an owner must actually receive notice would add a line to the law, which we cannot do.

Nevertheless, River Farm argues that the Board did not actually send notice of the breach because it knew by virtue of the returned certified mail that River Farm did not receive notice. In support of this claim, River Farm relies upon the principle

applicable to issues involving *receipt of notice*[4] that notice can only be presumed where "the letter (1) was written; (2) was properly addressed to the party; (3) contained the correct postage; and (4) was duly mailed in the United States Post Office." But River Farm's argument is unavailing and does not provide a basis to reverse the trial court's order. It is well settled that

> [c]onstitutional due process of law under both the Georgia and the United States Constitutions includes notice and hearing as a matter of right where one's property interests are involved. Our Supreme Court has explained that notice can be either express, constructive, or implied. Express notice embraces that which is communicated by direct information. Constructive notice is information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it. Finally, implied notice is that notice which is inferred or imputed to a party by reason of [their] knowledge of facts or circumstances collateral to the main fact, of such a character as to put [them] upon inquiry, and which, if inquiry were followed up with due diligence, would lead [them] directly to the knowledge of the main fact.

*Hicks v. Gabor*, 354 Ga. App. 714, 718(1)(c) (841 SE2d 42) (2020) (citation modified).

---

[4] See *Nadel v. Branch Banking & Trust Co.*, 340 Ga. App. 213, 215 (797 SE2d 140) (2017) (stating that whether a letter was written, properly addressed, contained the correct postage, and was duly mailed gives rise to the presumption that the letter was received).

We addressed a nearly identical argument regarding the notice requirement in another section of the tax code in *Harper v. Foxworthy, Inc.*, 254 Ga. App. 495, 497-98(1) (562 SE2d 736) (2002). In *Harper*, the taxpayer owned a condominium in Fulton County, Georgia. Id. at 496. She became delinquent on her taxes in 1998, and in 1999, a third party undertook steps to have the property transferred to themselves. Id. Pursuant to OCGA § 48-3-19, the tax code at issue, "the tax commissioner was required to notify [the taxpayer] in writing that her taxes had not been paid and that, unless paid, an execution for nonpayment of taxes would be issued." Id. Fulton County computer records showed that a delinquency notice was sent to the taxpayer, although she denied receiving the notice. Id. Further the third party was required to notify the property owner of their intent to pay the tax executions. Id. The third party submitted two letters addressed to the taxpayer with reference numbers corresponding to entries in the U. S. Post Office Certified Mail Firmbook page. Id. The taxpayer denied receiving these notice as well, but the sale was completed. Id. at 496-97. The taxpayer argued the sale should have been set aside because she failed to *receive* the proper notices. Id. The trial court found that although the taxpayer may not have

actually received the notices, the defendants had properly complied with the statutory requirements because the notices had been *sent* to the taxpayer. Id. at 497(1).

In affirming the trial court's order, we first noted "that notice can be either express, implied or constructive." *Harper*, 254 Ga. App. at 498(1). We then reasoned that the trial court was authorized to conclude that because the third party had sent numerous notices to the taxpayer, many of which were certified, that the taxpayer had constructive or implied notice equivalent to the receipt of actual notice. Id. Additionally, there was evidence that the taxpayer did not always pick up her certified mail within a reasonable time, and she admitted receiving the last of the notices, which was sent in the same fashion and by the same party as the earlier two certified letters. Id. Thus, we held that with reasonable inquiry the taxpayer could have discovered her delinquent tax status. Id.

Here, critically, River Farm expressly admits that the Board did send certified mailing of the breach of notice. Moreover, the record before us contains copies of several notices for the subject property addressed to River Farm at 3026 Gateway Center Parkway, the address which was on the closing documents when River Farm purchased the Skitts Mountain property only a year before the events at issue in this

9

case. These notices all address the approaching expiration of the conservation use covenant. Hill testified that two people were tasked with monitoring mail at 3026 Gateway Center Parkway on behalf of River Farm and that there were no issues receiving mail at that address. The record shows that River Farm received letters mailed to the 3026 Gateway Center Parkway address before and after the April 8, 2022 breach notice was mailed.

Furthermore, as found by the trial court, and undisputed by River Farm, River Farm was well aware that it had to file the application, and would face "significant penalties" if it failed to timely file. Hill, The River Farm's owner, averred that he was reminded "several times" that he would have to complete the application, Co-owner Duckworth, The River Farm Two's owner, also averred that he knew that the application had to be completed, and Hill's attorney also informed him that he had to complete the application. Indeed, Hill went to the tax office with the purpose of filling out the application and believed he had done so, although he admits he did not recall reading the receipts or comparing them to the tax map numbers of his properties. Thus, despite not actually receiving the Board's certified letter which was returned as "unclaimed," River Farm was well aware of and had notice of the conservation use

application requirements for the subject property. See *Five Star Steel Contractors*, 208 Ga. App. at 696 (undelivered certified mail was sufficient to notify garnishee of default judgment against him, where he was personally served at the initiation of the lawsuit and therefore aware of the lawsuit, and thus due process was not frustrated by later notice of post-judgment proceedings going unreceived). See also *Tate v. Hughes*, 255 Ga. App. 511, 512 (565 SE2d 853) (2002) (where a statute concerning notice by certified mail to a nonresident motorist is complied with, service is valid even where the certified mail is returned as unclaimed.) Thus, in light of all of this evidence, we find that the trial court was authorized to conclude under these circumstances that River Farm had constructive or implied notice equivalent to the receipt of actual notice. See *Harper*, 254 Ga. App. at 498(1).[5]

2. River Farm next argues the superior court erroneously shifted the burden to prove the existence of a timely application to River Farm where the Board is the party who is in complete control of the information that could prove this issue. We disagree.

---

[5] River Farm's reliance on our prior decision in *Morgan County Bd. of Tax Assessors v. Ward*, 318 Ga. App. 186 (733 SE2d 470) (2012), is misplaced. In that case, the issue was not whether receipt of the notice was required, but whether notice had been sent in the first instance. Id. at 188–91.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Cowart v. Widener*, 287 Ga. 622, 623(1)(a) (697 SE2d 779) (2010); OCGA § 9-11-56(c). To prevail on a motion for summary judgment, the movant must demonstrate there is no genuine issue of material fact. *Cowart*, 287 Ga. at 623(1)(a). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case." Id. Once the movant meets this burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." Id.

The issue before the trial court was whether River Farm breached the conservation use permit for the property located at Skitts Mountain Road. OCGA § 48-5-7.4(j)(1) requires "[a]n application for continuation of [the conservation use permit] upon a change in ownership of all or a part of the qualified property shall be

12

filed on or before the last date for filing tax returns in the year following the year in which the change in ownership occurred."

It is undisputed that Hill went to the Hall County Tax Office to fill out applications to continue the conservation use permits for various properties, including the Skitts Mountain Road property. Although he left believing that he had taken the necessary steps to continue the permit for the Skitts Mountain Road property,[6] the record before the trial court does not contain any evidence that River Farm had applied to continue the permit prior to the April 1, 2022 deadline, and thus, there was an absence of evidence in the record that River Farm made a timely application for the Skitts Mountain Property. See *Cowart*, 287 Ga. at 623(1)(a) (the movant must demonstrate there is no genuine issue of material fact). Then, the trial court properly shifted the burden to River Farm to set forth specific facts showing that there is a genuine issue for trial. See Id. (once the movant meets his burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial."). River Farm's argument that the Board is in exclusive possession of the

---

[6] Hill's affidavit states, "I asked for the application to be completed and [the office of the tax assessor's employee] wrote the number on a form that was never fully completed."

13

evidence that could prove a timely application was made is unavailing. River Farm had opportunity through its pleadings as well as the normal discovery avenues of depositions, answers to interrogatories, admissions, and affidavits to produce evidence that it had made timely application to satisfy the requirements of OCGA § 48-5-7.4(j)(1), and it failed to do so. Consequently, because it failed to produce evidence giving rise to a triable issue of fact, the trial court did not err in its determination that River Farm failed to meet its burden of setting forth facts to preclude a grant of summary judgment to the Board.

Accordingly, we affirm the trial court's order granting Hall County Board of Tax Assessors' motion for summary judgment.

*Judgment affirmed. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*